ORIGINAL

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **WOMEN'S STUDIES ORGANIZATION OF RHODE ISLAND COLLEGE; Nichole Aguiar, individually and as President of the Women's Studies Organization; Sarah Satterlee, individually and as Vice-President of the Women's Studies Organization; Jennifer Magaw, individually and as Treasurer of the Women's Studies Organization,** | CA 06 525S |
| **Plaintiffs,** | **C.A. No. 06-** |
| **v.** | |
| **RHODE ISLAND COLLEGE; John Nazarian, individually and in his capacity as President of Rhode Island College; Gary M. Penfield, individually and in his capacity as Vice President for Student Affairs of Rhode Island College,** | |
| **Defendants.** | |

## COMPLAINT

### Introduction

1. This is a Complaint for Declaratory Judgment, pursuant to Fed. R. Civ. P. 57, brought by an unincorporated student organization at Rhode Island College, and three student officers of that organization. The claims, against the College, the President and the Vice-President of this public college, are based upon 42 U.S.C. Section 1983 and the First Amendment of the United States Constitution, alleging infringement of Plaintiffs' right to free expression. In addition, Plaintiffs assert a violation under the Constitution of the State of Rhode Island, specifically, Article I, Section 21. Plaintiffs also

rely on the College's Student Handbook and Student Bill of Rights and allege a pendent breach of contract claim.

**Parties**

2. Plaintiff Women's Studies Organization (WSO) is an unincorporated association of students at Rhode Island College (RIC) dedicated to advocacy, education, and promotion of issues and rights relating to women, both within the College and in the larger society, including, as stated in Article 2 of the organization's constitution, the spreading of "awareness of Women's Studies on campus by focusing on activism, feminism, women's issues, and women's rights."

3. Plaintiff Nichole Aguiar is a fourth-year undergraduate student at RIC and is President of the WSO.

4. Plaintiff Sarah Satterlee is a fourth-year undergraduate student at RIC and is Vice-President of the WSO.

5. Plaintiff Jennifer Magaw is a second-year undergraduate student at RIC and is Treasurer of the WSO.

6. Defendant Rhode Island College (RIC) is a public educational institution of higher learning in the State of Rhode Island, established and governed, in part, by Title 16, Chapter 33 of the Rhode Island General Laws, and under the management and authority of the Rhode Island Board of Governors for Higher Learning, pursuant to R.I. Gen. Laws Section 16-59-1 et seq.

7. Defendant John Nazarian is the President of Rhode Island College. He is named in this case both individually and in his official capacity as President of the College.

8. Defendant Gary M. Penfield is the Vice President for Student Affairs of Rhode Island College. He is named in this case both individually and in his official capacity as Vice President of the College.

9. At all times herein, the individual Defendants and the Defendant Rhode Island College have been acting under color of law.

**Jurisdiction**

10. This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. Section 1331 (federal question) and 28 U.S.C. Section 1343 (civil rights).

11. Supplemental jurisdiction over Plaintiff's pendent state law claims is invoked pursuant to 28 U.S.C. Section 1367, as the claim arises out of the same transaction and occurrence as Plaintiffs' federal claim.

12. Venue is proper in the District of Rhode Island pursuant to 28 U.S.C. 1391(b) in that the claims arose in this district, and Plaintiffs and Defendants are located in this district.

13. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. Section 1988.

**Preliminary Statement**

14. Plaintiffs seek a declaration that the Defendants have violated Plaintiffs' right to freedom of expression, as guaranteed by the First Amendment to the

United States Constitution and by Article I, Section 21 of the Rhode Island Constitution. Plaintiffs further seek damages to redress the foregoing violations of their constitutional rights as well as other violations of law set forth herein.

**Facts**

15. In late November of 2005, Plaintiffs planned an event involving expression of the group's views on reproductive freedom. The plan involved putting up a "Burma shave" series of six signs on a grassy area beside the entrance road on RIC property. The signs were to state, progressively, "Keep your rosaries off our ovaries", "Our bodies, our choice", "Brought to you by RIC Women's Studies Organization."

16. Plaintiff Aguiar wrote to a RIC administrator on November 27, 2005, setting out the plan in detail, including the wording and location of the signs. She also inquired as to proper procedures for use of the space.

17. On November 30, 2005, a form was completed ("Request for use of facilities"). Notations on the form again set forth the intended plan, including the date (Sunday evening, December 4, 2005, through Monday, December 5, 2005), the location, and the wording of the signs. The form was circulated and approved by College administrative staff, including security (i.e., campus police), physical plant, and student activities.

18. On November 30, 2005, Plaintiffs received assurances from the administration that further approvals, including that of the College President, were not necessary.

19. Plaintiffs prepared their own signs and did not use RIC resources or include any express or implied RIC endorsement for their event.

20. Between 8:00 p.m. and 9:00 p.m. on Sunday, December 4, 2005, Plaintiffs put their signs in place, on the grassy area on the side of College Road, at the Mount Pleasant Avenue entrance.

21. The signs were intended to coincide with a general day of activism on women's issues, which was to take place on December 5, 2005.

22. Shortly after the signs went up on the evening of December 4, 2005, a Catholic priest drove onto the campus to conduct a weekly Catholic Mass at the home of President Nazarian at 10:00 p.m. The Catholic priest observed the signs and made reference to them at the weekly service.

23. President Nazarian immediately contacted the campus police regarding the signs. The campus police alleged that they knew nothing about the signs, although the "Request for use of facilities" form was approved by RIC security.

24. President Nazarian then ordered the campus police to take down the signs. They did so, leaving them in the snow for the entirety of the evening of December 4, 2005.

25. No attempt was made by the campus police, President Nazarian, or any other administrative staff to contact Plaintiffs with regard to the removal of the signs or the Plaintiffs' permission to utilize the space, although the Plaintiffs' email was on one of the signs.

26. Shortly after the signs were taken down, President Nazarian advised Plaintiffs that there were additional approval stages required, although Plaintiffs had previously been informed they had followed all necessary steps.

27. The Plaintiffs were further advised by President Nazarian that only college-made signs, directional in nature only, were allowed in that location.

28. The areas along the side of both entrances to the RIC campus (Fruit Hill Avenue and Mount Pleasant Avenue) have been utilized many times, over a period of years, for temporary signs relating to events, issues, and expression. On many occasions, this has occurred without any College approval process required. Students, student groups, faculty, and the College itself have produced and placed various signs and announcements in these locations.

29. At the time of this incident, RIC did not have any formal policy with regard to the creation, placement, or content of signs to be placed at the entrances to RIC. To the extent that any informal policy existed, it was not consistently enforced.

30. Plaintiffs suffered the loss of their chosen opportunity for expression on December 5, 2005, at a time when issues of women's rights and reproductive freedom were at the forefront of the news.

31. In the winter and spring of 2006, Plaintiffs again sought to utilize the grassy area beside the entrance road on RIC property for expressive purposes.

32. Plaintiffs sought to put up signs in connection with a day of activism in support of reproductive rights, which consisted of a speaker and discussion on the topic. The signs were also to offer directions to the event.

33. Once again, the request form was completed, but Defendants added a new, handwritten check-off line to the standard form. The new notation was for approval by "Administration."

34. On February 21, 2006, and on several subsequent dates, Defendants denied Plaintiffs' request for permission to use the area for temporary signs.

35. At the time of this incident, RIC did not have any formal policy with regard to the creation, placement, or content of signs to be placed at the entrances to RIC. To the extent that any informal policy existed, it was not consistently enforced.

36. During the 2004-2005 academic year, as well as prior academic years, RIC permitted other student organizations, as well as outside organizations, to utilize the area for communicative purposes at various times.

37. By long-established practice, Defendants have allowed the use of the area beside the entrance road to be used for expressive purposes, as a limited public forum.

38. On September 7, 2006, Defendants amended its policy on event planning by student groups.

39. The 2006-2007 Event Planning Guide for Student Groups now includes a section entitled, "Signage." It states, in part, the following:

> The College has a master plan that provides for uniform signage. As a matter of traffic safety, signs along College

> Road are not permitted. Signs announcing a specific program/event, whether sponsored by the College Administration or other organizations, must be requested and approved in advance. All such signage will be produced by College personnel in accordance with design criteria and placed in the designated areas by College personnel.

40. The policy does not set out any criteria by which the College Administration may approve or reject a sign request.

41. Since September 2006, the areas along the side of both entrances to the RIC campus (Fruit Hill Avenue and Mount Pleasant Avenue) continue to be utilized in a manner inconsistent with the new policy by various students, organizations, and the College itself by the placement of a variety of temporary signs relating to events, issues, and expression.

42. Among some of the signs that have been observed in these areas are election signs promoting certain candidates for local and national political offices. These signs, among others, have not been produced by College personnel, and are not directional in nature. Despite the fact that these signs are in violation of the College's new signage policy, there has been no attempt by the College to have them removed.

43. To the extent that the new policy is enforced by the College, it is applied selectively by the Defendants.

44. In light of the foregoing, Defendants have denied and continue to deny Plaintiffs the use of the requested area for expressive purposes, at least in part due to the content of the speech.

45. Defendants have also breached a contractual obligation made with Plaintiffs through the RIC Student Bill of Rights and the RIC Student Handbook.

46. The Student Bill of Rights, Article I, Article II, and Article XI, guarantee freedom of expression, communication and protest on condition that it does not disrupt essential operations of the College, damage property, obstruct entrances or exits to College facilities, or constitute unlawful harassment. The Student Handbook includes similar guarantees of free speech, subject to limitations on obstruction of college activities and threats to the safety of persons or property.

47. In light of the foregoing, Defendants have breached a contractual obligation relied upon by Plaintiffs in connection with the rights explicitly guaranteed by the College pursuant to the RIC Student Bill of Rights and the RIC Student Handbook.

**COUNT ONE: Violation of Right to Freedom of Expression, pursuant to the First Amendment to the United States Constitution and 42 U.S.C. Section 1983**

48. Plaintiffs hereby incorporate Paragraphs 1 through 47 as though fully set forth herein.

49. The actions challenged herein undermine Plaintiffs' right to freedom of expression in that:

A. The actions constituted and continue to constitute an unconstitutional prior restraint on Plaintiffs' expression of views;

B. The actions constituted and continue to constitute content-based regulation of speech;

C. The actions constituted and continue to constitute viewpoint-based regulation of speech;

D. To the extent the Defendants employed and continue to employ discretion, the actions have a chilling effect on the exercise of the First Amendment right to free expression by Plaintiffs and other members of the College.

50. As a result of the Defendants' actions, Plaintiffs have suffered a denial of their federal constitutional right to speak freely in a limited public forum.

51. By the foregoing acts and omissions, Defendants violated Plaintiffs' right to freedom of expression in violation of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray that this Court grant relief as hereinafter set forth.

**COUNT TWO: Violation of Right to Freedom of Expression, pursuant to Article I Section 21 of the Rhode Island Constitution**

52. Plaintiffs hereby incorporate Paragraphs 1 through 51 as though fully set forth herein.

53. As a result of the Defendants' actions, Plaintiffs have suffered a denial of their state constitutional right to freedom of expression.

54. By the foregoing acts and omissions, Defendants have violated Article 1, Section 21 of the Rhode Island Constitution by abridging Plaintiffs' right to freedom of expression by denying use of a limited public forum for Plaintiffs' desired expressive activity based in whole or in part on the content of the expression.

WHEREFORE, Plaintiffs pray that this Court grant relief as hereinafter set forth.

**COUNT THREE: BREACH OF CONTRACT**

55. Plaintiffs hereby incorporate Paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiffs have an express and implied contract with Defendants in connection with rights explicitly guaranteed by the College pursuant to the RIC Student Bill of Rights and the RIC Student Handbook.

57. The actions of Defendants constitute a breach of the express and implied contract.

58. As a result of Defendants' unlawful actions, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs pray that this Court grant relief as hereinafter set forth.

**PRAYER FOR RELIEF**

Plaintiff prays that this Honorable Court:

(a) Declare unconstitutional and in derogation of the First Amendment to the United States Constitution and Article 1, Section 21 of the Rhode Island Constitution, specifically the guarantees of freedom of speech, the actions of the Defendants as alleged herein;

(b) Declare unconstitutional and in derogation of the First Amendment to the United States Constitution and Article 1, Section 21 of the Rhode Island Constitution, specifically the guarantees of freedom of

speech, the new signage policy instituted by the Defendants both on its face and as applied;

(c) Award Plaintiffs damages for the violation of their constitutional rights by the Defendants;

(d) Award Plaintiffs damages for the breach of contract by the Defendants;

(e) Award Plaintiffs' reasonable attorney's fees and costs, pursuant to 42 U.S.C. Section 1988; and

(f) Grant such further relief as the Court may deem just and proper.

**Jury Demand**

Plaintiff hereby demands a jury trial on all issues triable by right to a jury.

Respectfully submitted,
On behalf of Plaintiffs,
By and through their attorney,

Jennifer Azevedo, Esq. (#6462)
Cooperating Attorney
Rhode Island Affiliate
American Civil Liberties Union
170 Westminster Street, Suite 800
Providence, RI 02903
Tel. (401) 454-4466
Fax (401) 351-3914
Email: azevedolaw@yahoo.com

Dated: ~~November~~ December 4, 2006